Filed 9/23/16  P. v. Flechsenhaar CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068964 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CN329809) |
| JARRET FLECHSENHAAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, K. Michael Kirkman, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

This case arose out of a road rage incident, which included a collision and altercation between Jarret Flechsenhaar and another driver. Police officers responded to the scene and, after an investigation, the other driver requested an investigating officer to make a citizen's arrest of Flechsenhaar. When the officer approached Flechsenhaar, he became agitated, refused to sit down when asked to do so, and swatted the officer's hand away. Flechsenhaar swore and struggled with several responding officers as they attempted to detain him. A jury convicted Flechsenhaar of resisting an executive officer by means of threats and violence. (Pen. Code, § 69; count 1.)[1] The court sentenced him to 180 days in jail, but stayed the sentence pending successful completion of three years of probation. On appeal, Flechsenhaar contends the court abused its discretion in two ways: (1) by allowing an officer to testify regarding statements made by the other driver during the investigation for the limited purpose of explaining the officers' subsequent conduct; and (2) by denying Flechsenhaar's motion to reduce his offense to a misdemeanor. We conclude the trial court did not abuse its discretion and we affirm the judgment.

BACKGROUND

A

Carlsbad Police Officers James Bellamy and Adam Bentley responded to a 911 call on March 6, 2014, regarding a road rage incident involving two individuals fighting

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

at the intersection of Poinsettia Lane and Avenida Encinas.  When the officers arrived,

Flechsenhaar was pacing back and forth in the median strip and the other driver was

seated in his vehicle.[2]

Officer Bellamy spoke with Flechsenhaar.  Flechsenhaar appeared extremely

agitated and said the other driver assaulted him and reversed his vehicle into

Flechsenhaar's vehicle.  When Officer Bellamy asked for more details about his version

of the events, Flechsenhaar kept shaking his head, appeared agitated, and did not provide

additional information.  Flechsenhaar complained about pain in his wrist and one of the

officers called an ambulance.

Officer Bellamy then interviewed the other driver.[3]  The other driver said he was

involved in a road rage incident, which started as he was traveling northbound on

Interstate 5.  He stated a dark truck began tailgating him and the driver of the dark truck

(Flechsenhaar) was making obscene hand gestures and other hand gestures.  The other

driver exited the freeway at Poinsettia Lane and was going to a bank in the shopping

---

[2]    Flechsenhaar was one of several individuals who had called 911.  He said he was
attacked by a driver in a silver sports utility vehicle (SUV) who had punched him in the
face.

[3]    Prior to allowing the officer to disclose the other driver's statements, the court
instructed the jury the statements were not "provided to vouch for this individual …, it's
not being provided for the truth of the matter asserted.  There's no assessment being made
by the court here with regard to the veracity of [the other driver] who was offering this
information to the officer.  The information is being presented for a non[-]hearsay
purpose not for the truth of the information, but simply to further explain the subsequent
actions of the officer, the information that he was operating on as he proceeded with this
investigation, and it's to be limited for that purpose.  You're not to accept it as true and for
the truth of the matter asserted."

center. He turned left onto Avenida Encinas and pulled into the left turn lane to turn into the parking lot. However, because Flechsenhaar was following him and appeared agitated, the other driver decided he did not want to be cornered in the parking lot. He changed lanes and pulled into the left through lane, but he had to slow for traffic. As he slowed for traffic, Flechsenhaar's dark truck rear-ended him. The driver got out of his vehicle and began to take photos of both vehicles with his phone. He said Flechsenhaar came over, knocked the phone from his hand, and began pushing him with closed fists. The driver put his foot up to keep Flechsenhaar back and Flechsenhaar fell down.[4]

Officer Bellamy noticed a large red bump on the driver's left jawline and throat area, which looked like fresh trauma. The driver said Flechsenhaar struck him with a closed fist in the throat area and it was painful.

Officer Bellamy thought the other driver's story about what occurred matched the evidence he observed at the scene, such as the visible injury to the other driver and how the cars were positioned. Officer Bellamy asked the driver if he would like to place Flechsenhaar under a citizen's arrest and the other driver said he would.

Officer Bellamy returned to speak to Officer Bentley and Officer Cody Green, who were standing near where Flechsenhaar was seated on the curb. As the officers were speaking, Flechsenhaar stood up abruptly. Officer Bellamy asked Flechsenhaar to sit down. Officer Bellamy thought he had probable cause to arrest Flechsenhaar for battery

---

[4]     Flechsenhaar is six feet and 11 inches tall and weighed approximately 200 to 240 pounds. The other driver was approximately six feet tall and weighed approximately 175 to 190 pounds.

4

on the other driver and, due to Flechsenhaar's large stature, thought it would be safer to have Flechsenhaar seated as Officer Bellamy dealt with him and placed him under arrest. Flechsenhaar continued to stand with a "thousand-yard stare" and a look of agitation on his face. Flechsenhaar did not respond to Officer Bellamy.

Officer Bellamy again asked Flechsenhaar to sit down and told Flechsenhaar he was giving a lawful order to sit down. Flechsenhaar did not respond for several seconds. Officer Bellamy became concerned Flechsenhaar was planning to do something. Officer Bellamy reached out for Flechsenhaar's arm and placed his hand on Flechsenhaar's chest to assist Flechsenhaar to sit down. Flechsenhaar brought his arms up and swatted Officer Bellamy's arms away. This sequence happened twice.

Because Flechsenhaar was resisting, Officer Bentley stepped in to assist and attempted to grab Flechsenhaar's left hand. Flechsenhaar swung his left elbow back towards Officer Bentley's head, but Officer Bentley was able to duck out of the way. Given the height difference between Flechsenhaar and the officers, Flechsenhaar's elbow was near Officer Bentley's head when Flechsenhaar moved his elbow back from just below shoulder level.

Officer Bellamy quickly grabbed Flechsenhaar's left arm to bring him to the ground. Flechsenhaar, however, began to violently struggle to pull away from Officer Bellamy's grasp. Officer Bellamy advised Flechsenhaar he was under arrest. Officer Bentley had Flechsenhaar's right arm and struggled to put it behind Flechsenhaar's back. After struggling for several seconds, Flechsenhaar and the officers fell forward onto the ground.

5

Flechsenhaar continued to struggle and flail his arms as the officers tried to get his arms behind his back. Officer Bellamy lost control of Flechsenhaar's left arm and it went under Flechsenhaar's body as he rolled onto his left side.

Officer Bellamy gave two knee strikes to try to get Flechsenhaar to comply and stop resisting. The officers commanded Flechsenhaar to stop resisting, but he did not comply. Officer Bellamy explained he applied necessary force because of the active resistance and he was trained to use the knee strikes as a distraction technique to allow the officers to put Flechsenhaar into handcuffs. Flechsenhaar continued to violently resist.

Officer Green, who had also responded to the call and was standing nearby, used a taser to deliver a contact tase or drive stun as a pain compliance technique. Flechsenhaar said "all right, all right, all right," as though he would comply. However, Flechsenhaar continued to resist after the taser cycle ended. Eventually the three officers were able to get control of Flechsenhaar's arms and place him in handcuffs.

Flechsenhaar stopped resisting momentarily. However, when Officer Bellamy attempted to move him to the patrol car, Flechsenhaar went completely limp for a moment before becoming rigid. The officers dragged Flechsenhaar to the vehicle as he remained stiff.

When they got to the patrol car, they conducted a search incident to arrest. Flechsenhaar remained rigid and moved his body away from the patrol car. He also kicked Officer Bentley as he attempted to spread Flechsenhaar's feet to conduct the search. Flechsenhaar banged his head on the back window of the patrol car. During this

6

incident, Flechsenhaar made vulgar statements toward the police officers such as "fucking pigs," "fuck you pigs," "fuck your families," and "fuck your kids" and calling the officers similar vulgar names.

After Flechsenhaar was placed in the patrol car, he complained his shoulder hurt. Extra cuffs were placed on Flechsenhaar to make him more comfortable. Officer Bellamy transported Flechsenhaar to the hospital for medical clearance. Another officer stayed on scene and transported Flechsenhaar to jail.

The prosecution presented expert testimony indicating the officers' actions and use of force were reasonable and appropriate under the circumstances. The expert stated Flechsenhaar's refusal to comply with verbal commands to sit down constituted a misdemeanor of delaying or resisting a peace officer (§ 148). When Flechsenhaar swatted the officer's hands away, he committed a battery on a peace officer (§ 243, subd. (b)), another misdemeanor. When he resisted arrest, it constituted the crime of resisting an executive officer (§ 69).

B

Flechsenhaar testified on his own behalf. He stated he was exiting northbound Interstate 5 at Poinsettia Lane to go to the grocery store when a silver vehicle sped up and got very close to Flechsenhaar's truck. He stated he was headed westbound on Poinsettia Lane and stopped at a light to turn left onto Avenida Encinas when the same silver vehicle pulled up very close in the lane next to him and sideswiped him twice.

Flechsenhaar stated he turned on to Avenida Encinas and veered into the left turn lane to turn into the shopping center where he stopped behind other vehicles. He stated

7

the same silver vehicle pulled up next to him and slammed on his brakes. He said the driver in the silver vehicle rolled down his window, was "foaming at the mouth," and showed Flechsenhaar his phone. Flechsenhaar stated the silver vehicle turned on its reverse lights and Flechsenhaar decided to go around the vehicle. He said the silver vehicle backed up towards him and he could not clear the front of his truck so his truck and front left tire hit the back of the silver vehicle.

Both drivers got out of their vehicles and made contact. Flechsenhaar stated the other driver was growling and making strange faces. Flechsenhaar stated the other driver lunged at him and hit him with his phone. Flechsenhaar stated he jabbed the other driver to keep him away. The other driver took a couple of steps back and then ran toward Flechsenhaar and tried to kick him. Flechsenhaar grabbed the other driver's leg. At that point, a military police officer stopped, broke up the fight, and left. Flechsenhaar stated he called 911 because he felt he was the victim of road rage.

According to Flechsenhaar, when Officer Bellamy arrived, Flechsenhaar got out of his truck and Officer Bellamy stated, "What the fuck are you doing in the middle of the street." Flechsenhaar told Officer Bellamy the other driver hit him and Officer Bellamy went to speak to the other driver.

Flechsenhaar stated he walked around taking pictures as Officer Bellamy spoke to the other driver. Paramedics arrived and evaluated Flechsenhaar's sore wrist.

Flechsenhaar was sitting on the median when Officer Bellamy returned. Flechsenhaar stood up to converse with him, but denied being agitated or angry. According to Flechsenhaar, Officer Bellamy started telling him a story "as if it were fact

8

and telling me that I'm going to go to jail for battery." Flechsenhaar said he tried to explain his version of events by gesturing and pointing when Officer Bellamy and the other officers started screaming at him and told him to sit down. Flechsenhaar stated he was attempting to sit down when the officers jumped on him and tackled him.

Flechsenhaar stated his right hand was handcuffed without difficulty, but when they started grabbing his left shoulder, he had to tell them his left shoulder does not bend that way because of a history of shoulder surgeries. He stated he felt a dozen knee strikes to his body, he was tased, and he heard his wrist pop as Officer Bellamy was trying to force his left arm behind his back. When they got to the patrol car, he stated an officer's boot was in the way so he could not spread his legs. He said he was kicked in the groin and someone slammed his head into the roof of the police car. Flechsenhaar admitted he swore and said vulgarities, but denied calling the officers pigs or speaking about their families.

When a supervising officer arrived, Flechsenhaar asked for another pair of handcuffs to relieve his shoulder pain. He was taken to the hospital where he was treated for a shoulder injury, a wrist fracture, contusions, cuts, bruises, and a concussion.

The defense presented expert testimony indicating it was not lawful for Officer Bellamy to order Flechsenhaar to sit down without telling him where the investigation stood. The expert opined it was not appropriate to use pain compliance or force Flechsenhaar to the ground without informing him he was under arrest. The expert also opined Flechsenhaar used permissible proportional resistance when he swatted the officer's hands away and the officers' use of force was excessive.

9

I

Flechsenhaar contends the court violated the hearsay rule and his Sixth Amendment right to confront witnesses by allowing Officer Bellamy to describe the other driver's statements about what occurred before law enforcement officers responded to the scene. We disagree.

" 'Hearsay evidence,' " which "is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated," is generally inadmissible. (Evid. Code, § 1200.) However, "out-of-court statements not offered to prove the truth of the matter stated are not regarded as hearsay. No special exception to the hearsay rule need be invoked for their admission; *they are not within the hearsay rule at all.*" (1 Witken, Cal. Evidence (5th ed. 2012) Hearsay, § 5, pp. 788-789.) A statement is not hearsay if it is " 'offered to prove that the statement imparted certain information to the hearer and that the hearer, believing such information to be true, acted in conformity with that belief. The statement is not hearsay, since it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement.' " (*People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.) We apply the "abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question." (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

In this case, the court and counsel advised the jury the other driver's statements were not offered for their truth, but to explain their effect on the officers' subsequent

actions. Flechsenhaar was charged with resisting an executive officer in violation of section 69.[5] One of the issues in the case was whether the officers were engaged in the lawful performance of their duties at the time Flechsenhaar engaged in resistant conduct. (*People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543.)

The officers were dispatched to the scene to investigate an incident involving two individuals fighting in an intersection. Officer Bellamy talked to both individuals. He evaluated the demeanor and the statements of both individuals along with the physical evidence he was able to observe. Based upon this evaluation, he determined there was probable cause to believe Flechsenhaar had battered the other driver.

However, contrary to Flechsenhaar's contention on appeal, probable cause to make a citizen's arrest for battery of the other driver was not the focus of the case. Rather, the jury was asked to evaluate the reasonableness of the events and the lawfulness of the officers' conduct *after* Officer Bellamy received the statement to determine if Flechsenhaar violated section 69.

As the prosecutor explained in closing statements, even though Officer Bellamy approached Flechsenhaar with an intention to make a citizen's arrest for the battery of the other driver, he did not get a chance to do so before Flechsenhaar stood up abruptly, refused lawful orders to sit down, and swatted the officer's hands away as the officer attempted to help him to sit down. These subsequent actions were separate crimes,

---

[5]     Section 69, subdivision (a), punishes "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty."

11

violations of sections 69 and 148, subdivision (a), committed in the presence of the officer. Flechsenhaar was prosecuted for the subsequent resistant conduct in violation of section 69.

The limited nature of the other driver's statements to Officer Bellamy was made abundantly clear to the jury. Before Officer Bellamy was allowed to testify regarding the other driver's statements, the court advised the jury about the limited purpose for which the information was offered and admonished them not to accept the statements as true. The court told the jury they would have a written instruction in this regard. Although not transcribed as part of the appellate record, the jury was similarly advised about the limited purpose of the evidence during opening statements.

The jury received both a verbal and written jury instruction about the limited purpose of the other driver's statements admitted through Officer Bellamy's testimony. The court stated the testimony "was admitted … for the limited purpose of establishing what the officers were told for purposes of determining reasonableness in pursuing their investigation. You may consider that statement for that purpose and for no other. You may not consider the statement for any other determination regarding what may have occurred prior to the arrival of law enforcement, or whether the defendant actually committed a battery against [the other driver]. You may not consider the statement for the truth of the matter asserted."

During closing statements, the prosecutor explained the information from the other driver about what occurred prior to when the police arrived "was only given to you for background. So I want to make it very clear, he is not charged with that, nor do I care

12

who's guilty of the battery or what happened in the battery. We're just explaining why the officers are showing up at the scene. Because you could imagine it wouldn't make any sense if we were to hide this from you and you were to just hear the officers were then telling the defendant to sit down. … And so that's why you heard the background, in order to explain the reasonableness of Officer Bellamy's actions."

Similarly, defense counsel explained the limited purpose of the statements from the other driver. "You can't believe the truth of the matter asserted. … [T]he statements of [the other driver] to the police officers were admitted for the limited purpose of establishing what the police officers were told. For the purpose of determining the reasonableness of the officers['] further investigation."

In rebuttal, the prosecutor further clarified the jury was not asked to consider whether a battery occurred against the other driver. "My whole point, the theory of the People's case, is that [Flechsenhaar is] being detained, he must comply with the lawful orders, he must sit down, he cannot slap the officer's hand, he must sit down again, he cannot slap the officer[']s hand again. When he's taken to the ground he cannot kick and [thrash] his body about because he is still—had been under a lawful detention and now he is actually commit[ing] the crime of [violating section] 148[, subdivision (a)]."

Based upon the evidence, and the multiple clarifications for the jury, we conclude there was no abuse of discretion in allowing Officer Bellamy to relay the statements from the other driver. Because the statements were not offered for their truth, but for background information to evaluate the reasonableness of the officers' subsequent conduct, they did not fall within the hearsay rule. "[T]here are no confrontation clause

13

restrictions on the introduction of out-of-court statements for *nonhearsay* purposes. (*People v. Cage* (2007) 40 Cal.4th 965, 975, fn. 6, citing *Crawford v. Washington* (2004) 541 U.S. 36, 59, fn. 9 ["The [c]lause … does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"].)

## II

Flechsenhaar also contends the court erred in denying his request to reduce his conviction to a misdemeanor and denied him due process. We cannot agree.

"It is the Legislature's function ' "to define crimes and prescribe punishments . . . ." [Citation.]' [Citation.] The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed. 'A felony is a crime that is punishable with death, [or] by imprisonment in the state prison . . . . Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions.' (§ 17, subd. (a).) There is, however, a special class of crimes involving conduct that varies widely in its level of seriousness. Such crimes, commonly referred to as 'wobbler[s]' [citation], are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail and/or by a fine. (§ 17, subd. (b); [citation].)" (*People v. Park* (2013) 56 Cal.4th 782, 789.)

A violation of section 69 is a wobbler offense because a court has the discretion to sentence the crime as either a felony or a misdemeanor. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974 (*Alvarez*).) When considering a motion to reduce a wobbler crime to a misdemeanor, the court may consider factors relevant to sentencing

decisions such as " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' " (*Id.* at p. 978.) Where appropriate, the court may also consider general objectives of sentencing such as those set forth in rule 4.410 of the California Rules of Court, which include, among other factors, "[p]rotecting society," "[p]unishing the defendant," and "[e]ncouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses."

A court has broad discretion under section 17, subdivision (b), in deciding whether to reduce a wobbler offense to a misdemeanor. (*Alvarez*, *supra*, 14 Cal.4th at p. 977.) We will not disturb the court's decision on appeal unless the party attacking the decision meets its burden to clearly show the decision was irrational or arbitrary. (*Ibid.*) Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives. (*Id.* at pp. 977-978.) We will not reverse the court's decision " 'merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*Id.* at p. 978.)

In this case, the court took into account the offense itself and commented Flechsenhaar's version of events, regarding his interaction both with the other driver and with the officers, was not believable. The court noted Flechsenhaar had difficulty controlling his emotions and behavior during the course of the trial. The court recalled an incident when, as Flechsenhaar was asked to stand next to one of the officers for a height

15

demonstration, Flechsenhaar raised his arm quickly in almost an angry fashion and said something to the officer under his breath.

The court observed Flechsenhaar "endangered the health, safety, and welfare of a number of law enforcement officers" when all he had to do was cooperate. The court took into account the fact Flechsenhaar was involved in a residential burglary as a juvenile, with various probation violations. Although the prior incident was years ago, the court noted the current offense was not his first encounter with the law and this encounter was significant. The court also considered the lack of remorse Flechsenhaar showed during his probation interview when he stated he wanted the arresting officers to lose their jobs and "pay me for what they did and for breaking my wrist."

The court granted probation, but denied the motion to reduce the matter to a misdemeanor. The court held open the possibility of reevaluating the matter at a later time, once there was an opportunity to consider Flechsenhaar's performance on probation. However, the court stated, "as things stand right now, the circumstances of the event and the manner in which [Flechsenhaar] conducted himself during the course of the event, after the event, ultimately in court, and with the probation, suggests to the court that the matter should, for the time, remain a felony."

Nothing about the court's stated reasons for denying the request to reduce Flechsenhaar's conviction to a misdemeanor indicate its decision was irrational or arbitrary. Flechsenhaar has not clearly shown to the contrary.

Finally, there was no deprivation of Flechsenhaar's federal constitutional right to due process under the Fourteenth Amendment. The court considered Flechsenhaar's

16

motion under section 17, subdivision (a), and applied the appropriate sentencing factors to reach its discretionary decision.  He received "all that was due" under California law. (*Ross v. Okla.* (1988) 487 U.S. 81, 91 [108 S.Ct. 2273, 2280, 101 L.Ed.2d 80, 92], citing *Hicks v. Okla.* (1980) 447 U.S. 343 [100 S.Ct. 2227, 65 L.Ed.2d 175].)

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


IRION, J.